UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWASAKI KISEN KAISHA LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>BENICIA PORT TERMINAL COMPANY and AMPORTS, INC.,<br><br>Defendants. | No. 2:19-cv-00822-TLN-KJN<br><br>**ORDER** |
| BENICIA PORT TERMINAL COMPANY and AMPORTS, INC.,<br><br>Counter-Claimant,<br><br>v.<br><br>KAWASAKI KISEN KAISHA LIMITED,<br><br>Counter-Defendant. | |
| BENICIA PORT TERMINAL COMPANY and AMPORTS, INC.,<br><br>Third-Party Plaintiff,<br><br>v. | |

| | |
|---|---|
| 1 | VOLKSWAGEN KONZERNLOGISTIK GMBH & CO., |
| 2 | |
| 3 | Third-Party Defendant. |

This matter is before the Court on Plaintiff Kawasaki Kisen Kaisha Limited's ("Plaintiff") Motion to Set Aside the Order of Dismissal. (ECF No. 38.) Defendants Benicia Port Terminal Company ("BPTC") and Amports, Inc. ("Amports") (collectively, "Defendants") filed an opposition. (ECF No. 39.) Plaintiff filed a reply. (ECF No. 40.) For the reasons set forth below, the Court DENIES Plaintiff's Motion to Set Aside the Order of Dismissal.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an ocean carrier that operates ocean vessels and transports commercial cargo including automobiles. (ECF No. 1 at 2.) Plaintiff transported automobiles for Third-Party Defendant Volkswagen Konzernlogik GMBH & Co. ("Volkswagen"). (*Id.* at 5.) Defendants operate the Port of Benicia ("Port"). (*Id.*) In or about November 2017, Plaintiff's vessels used the terminal at the Port so Volkswagen could discharge their cargo. (*Id.*) Defendants invoiced Plaintiff for various charges related to their use of the Port (the "Disputed Charges"). (*Id.*; ECF No. 1 at 5.)

Plaintiff contended Volkswagen was contractually responsible for the Disputed Charges. (ECF No. 1 at 5; ECF No. 38 at 2.) On February 15, 2019, Defendants demanded Plaintiff's immediate payment of the Disputed Charges and payment of future service and facilities charges, warning that BPTC reserved the right to seek legal remedies against Plaintiff including prohibiting Plaintiff's vessels from discharging at the Port and/or the arrest of Plaintiff's vessels. (ECF No. 1 at 5–6.) On March 18, 2019, Plaintiff reached a provisional agreement with Defendants to avoid disruption of Port access — the Escrow and Tolling Agreement — that provided for Plaintiff to pay the Disputed Charges (inclusive of late charges but not of attorneys' fees) of $432,955.96 into escrow. (ECF No. 38-1 at 4; ECF No. 39 at 9; ECF No. 12 at 6.) On August 20, 2020, Defendants filed a third-party complaint against Volkswagen, seeking payment

2

of the Disputed Charges, attorneys' fees, other costs of collection, and interest accrued after March 18, 2019.  (*See* ECF No. 11.)

In December 2020, Plaintiff and Defendants began negotiating a settlement agreement, with 50 percent of the money in escrow being returned to Plaintiff and 50 percent going to Defendants.  (ECF No. 38-1 at 4.)  Plaintiffs proposed "[t]he settlement assumes a full resolution as between all parties including [Volkswagen] with each party to bear its own fees and costs."  (ECF No. 38-2 at 5.)  Defendants responded, accepting the financial terms of a 50/50 split, and stating that upon receipt of payment it would dismiss the complaint with prejudice against both Plaintiff and Volkswagen.  (*Id.* at 4.)  However, Defendants did not explicitly agree to a "full resolution" with Volkswagen and to the term that each party would bear its own fees and costs.  (*Id.*)  Defendants contend they "asked for confirmation of the counterproposal by the end of the week, December 18, 2020."[1]  (ECF No. 39 at 11.)  Two days later, Plaintiff's counsel responded, "[o]n behalf of [Plaintiff] we can confirm settlement on this basis and agree that we would like to complete documentation before the break."  (ECF No. 38-2 at 4.)  The settlement agreement and release (the "Settlement Agreement") was fully executed on December 21, 2020.[2]  (ECF No. 38-2 at 13–19; ECF No. 39 at 11.)

This case was closed on December 29, 2020, following a stipulation for voluntary dismissal with prejudice that was signed by counsel for both parties and filed with the Court on December 28, 2020.  (ECF Nos. 35–36.)  Plaintiff filed the instant motion to set aside the order of dismissal on January 25, 2021.  (ECF No. 38.)

///

---

[1] Based on the quoted language, it is unclear whether Defendants are referring to the week of December 18, 2020, or by the end of the week, on December 18, 2020.  In light of the fact that December 18, 2020, was a Friday, Defendants are likely referring to the latter.  However, the Court finds that this distinction is irrelevant to the resolution of the instant matter.

[2] The Settlement Agreement provided to the Court contains Plaintiff's signature but no date.  (*See* ECF No. 38-2 at 18.)  Defendants contend in their opposition that Plaintiff's signature was provided on December 21, 2020, which Plaintiff does not contest in its reply.  (ECF No. 39 at 11; *see* ECF No. 40.)  As such, the Court will assume that the Settlement Agreement was fully executed on December 21, 2020.

II.     **STANDARD OF LAW**

The Court may grant reconsideration under Federal Rule of Civil Procedure ("Rule") 59(e) or Rule 60.  *See Schroeder v. McDonald*, 55 F.3d 454, 458–59 (9th Cir. 1995).  A motion to alter or amend a judgment under Rule 59(e) must be filed no later than twenty-eight days after the entry of judgment.  Fed. R. Civ. P. 59(e).  Therefore, a "motion for reconsideration" is treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within twenty-eight days of entry of judgment; otherwise, it is treated as a Rule 60(b) motion for relief from judgment or order.  *Rishor v. Ferguson*, 822 F.3d 482, 490 (9th Cir. 2016); *see Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001).  While Plaintiff moves to set aside a dismissal pursuant to either Rule 59(e) or 60(b) (*see* ECF No. 38-1 at 6–10), Plaintiff's motion was filed within twenty-eight days of entry of judgment and is therefore construed as a motion to alter or amend the judgment under Rule 59(e).

Rule 59(e) does not list specific grounds for a motion to amend or alter, therefore the district court enjoys considerable discretion in granting or denying the motion.  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)).  Nevertheless, a motion for reconsideration under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law."  *McDowell*, 197 F.3d at 1255 (emphasis in original) (citation omitted).  Further, "[a] motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original).

"In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."  *Allstate Ins. Co.*, 634 F.3d at 1111.

///

### III. ANALYSIS

Plaintiff moves to set aside the Court's dismissal under various disorganized legal theories and requests enforcement of the Settlement Agreement. (*See* ECF No. 38-1.) The Court will first address each of these arguments to set aside the Order of dismissal in turn. Because the Court finds Plaintiff's arguments are without merit and the Settlement Agreement is valid, it will then evaluate whether it can enforce the terms of the Settlement Agreement.

#### A. Motion to Set Aside the Court's Dismissal

Plaintiff argues Defendants "secretly obtained an additional payment from [Volkswagen], separate from, and in addition to, the consideration [Plaintiff] paid under the [Settlement Agreement]." (ECF 38-1 at 6.) Plaintiff recently learned Volkswagen intends to pursue an indemnity claim against Plaintiff to recover their settlement costs. (*Id.*) Plaintiff contends it "had no idea that BPTC secretly obtained payment as much as $380,000 from [Volkswagen] that was separate from, and in addition to, [Plaintiff's] consideration paid for settlement" and it would not have agreed to settle had it been aware of this payment. (*Id.* at 7.) Plaintiff appears to argue that this additional payment by Volkswagen to Defendants amounts to a violation of the implied covenant of good faith and fair dealing, fraud, breach of warranty, and unjust enrichment.[3] The Court will evaluate each in turn.

##### i. *Violation of the Implied Covenant of Good Faith and Fair Dealing*

Plaintiff seems to argue that the implied covenant of good faith and fair dealing applies to the negotiations that occurred prior to the execution of the Settlement Agreement. (ECF No. 38-1 at 7.) Plaintiff contends that BPTC "secretly obtained payment as much as $380,000 from [Volkswagen that was separate from, and in addition to, [Plaintiff's] consideration paid for settlement." (*Id.*) Plaintiff maintains that it was denied the benefit of the foreclosure of this "secret deal" and it "flies in face of the rule" that there is an implied covenant of good faith and fair dealing in every contract. (*Id.*) In opposition, Defendants maintain Plaintiff "cites no authority that the implied covenant applies to pre-contract negotiations." (ECF No. 39 at 15.)

---

[3] These are the theories identified by Defendants in their opposition, which Plaintiff does not contest in its reply. (*See* ECF Nos. 39, 40.)

5

The Court agrees with Defendants that "there is no obligation to deal fairly or in good faith absent an existing contract." (*Id.* (citing *Racine & Laramie, Ltd. v. Dept. of Parks & Rec.*, 11 Cal. App. 4th 1026, 1032 (1992)). As Defendants note, "absent 'special circumstances' not present here[4], such as an explicit agreement to negotiate in good faith, 'there is no obligation in California to bargain for a new or amended contract in good faith.'" (*Id.* (citing *Racine*, 11 Cal. App. 4th at 1035; *Kouretas v. Nationstar Mortg. Holdings, Inc.*, No. 13-cv-02632, 2014 WL 4109623 at *3 (E.D. Cal. Aug. 19, 2014) ("Moreover, under California contract law, the covenant . . . cannot be extended to create obligations not contemplated by the contract. Nor can the implied covenant contradict the express terms of a contract." (internal quotations and citations omitted))). Accordingly, the Court declines to set aside the Order of dismissal based on an alleged violation of the implied covenant of good faith and fair dealing.

### ii.     Fraud

Plaintiff argues the "formal settlement document" was intended "not to effectuate the intent of the parties," but rather to serve as Defendants' cover for the "secret plan" to collect from both Plaintiff and Volkswagen, in violation of "the binding settlement [Defendants] agreed to in the exchange of emails submitted as Exhibit A."[5] (ECF No. 38-1 at 7.) Plaintiff contends this "is a clear example of fraud in 'execution' or 'inception' of a contract," as Defendants "carr[ied] out a course of action in direct contradiction to a binding written settlement exchange and concealing it as release papers to carry out that settlement[.]"[6] (*Id.* at 7–8.) Plaintiff asserts Defendants'

---

[4]     Plaintiff does not contest this fact nor argue any special circumstances exist. (*See* ECF Nos. 38-1, 40.)

[5]     Exhibit A is attached to the declaration submitted by Plaintiff's counsel, Conte C. Cicala, and is the email exchange between Mr. Cicala and Anthony Barron, Defendants' counsel, confirming the terms for the settlement. (ECF No. 38-2 at 2–6.)

[6]     Plaintiff portrays the exchange of emails between Plaintiff's counsel and Defendants' counsel submitted as Exhibit A as "the binding settlement" and the Settlement Agreement as the "release papers to carry out that settlement." (ECF No. 38-1 at 7–8.) The Court agrees with Defendants that the Settlement Agreement "is a fully integrated agreement and therefore supersedes any prior agreements between the parties," as the Settlement Agreement contains the following clause: "This Agreement contains the entire agreement and understanding between and among the Parties and supersedes all prior negotiations and all agreements, covenants,

6

"secret settlement" with Volkswagen was a material fact requiring disclosure because it was a "central aspect of the consideration" purchased by Plaintiff in the Settlement Agreement and there would have been no Settlement Agreement or dismissal of the case if it had been revealed.  (ECF *Id.* at 7–9.)

In opposition, Defendants contend there was no fraud in the execution because Plaintiff does not submit "a shred of evidence that it was 'deceived as to the nature of the act' or did 'not know what [it was] signing or did 'not intend to enter into a contract at all,'" nor can Plaintiff explain why it failed to protect itself from this exact harm.  (ECF No. 39 at 15–16.)  Defendants further contend Plaintiff's fraud in the inducement argument seems to be either the Settlement Agreement is voidable "due to fraud because the real binding agreement was the email exchange" or "based on alleged concealment of BPTC's settlement agreement with [Volkswagen]."  (*Id.* at 16.)  Defendants maintain there was no fraud in the inducement, as it entailed Plaintiff "initiating and then reinitiating settlement discussions with [BPTC], ultimately 'confirming' [BPTC's] settlement email, and then negotiating a Settlement Agreement and Release at arm's length."  (*Id.*)  Defendants finally note they had no duty to disclose a confidential settlement with another party, but even if there was a duty, Plaintiffs were put on notice about negotiations between Defendant and Volkswagen because it is in the record.  (*Id.* at 16–17 (citing ECF No. 30).)  Additionally, Defendants argue they timely performed all obligations under the terms of the negotiated Settlement Agreement.  (ECF No. 39 at 12.)

///

///

---

representations and warranties, express or implied, written or oral, concerning the subject matter hereof.  This Agreement is an integrated agreement.  No other agreements, covenants, representations and warranties, express or implied, oral or written, have been made by any Party hereto to any other Party concerning the subject matter hereof.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof other than those referred to herein are merged herein.  No prior drafts or versions of this Agreement may be used for purposes of interpreting this Agreement." (ECF No. 39 at 13 (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1371 (9th Cir. 1978); *EPA Real Estate P'ship v. Kang*, 12 Cal. App. 4th 171 (1992)); *see also* ECF No. 38-2 at 15.)

7

California courts explain the difference between both types of fraud as follows:

> When a plaintiff alleges fraud in the inducement, the plaintiff is asserting that it understood the contract it was signing, but that its consent to the contract was induced by fraud. In contrast, when a plaintiff alleges fraud in the execution, the plaintiff is asserting that it was deceived as to the very nature of contract execution, and did not know what it was signing. A contract fraudulently induced is voidable; but a contract fraudulently executed is void, because there never was an agreement.

*Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 958 (2008) (citing *Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal. 4th 394, 415 (1996)). In order to prevail on a fraud in the inducement claim, a plaintiff must prove: "(1) concealment of a material fact[;] (2) which defendant had a duty to disclose[;] (3) the defendant intentionally concealed the fact with the intent to defraud[;] (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed fact[;] and (5) as a result, sustained damage." *Dienes v. FCA US LLC*, No. 16-cv-1812-AJB-BGS, 2018 WL 1258118, at *1 (S.D. Cal. Mar. 12, 2018) (citing *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 468, 775 (2013)). To prevail on a fraud in the execution claim, a plaintiff must also prove reasonable reliance — "the contract is not considered void due to the fraud if the plaintiff had a reasonable opportunity to discover the true terms of the contract," but rather is void "when the plaintiff's failure to discover the true nature of the document executed was without negligence on the plaintiff's part." *Brown*, 168 Cal. App. 4th at 958–59.

Here, the Court disagrees Plaintiff was put on notice about negotiations between Defendant and Volkswagen. The language in the stipulation reads as follows: "WHEREAS, the Parties have agreed to extend [Volkswagen's] time to answer or otherwise respond to the First Amended Complaint to December 30, 2020 to continue efforts to resolve this matter[.]" (ECF No. 30 at 2.) Defendants cannot reasonably argue that this language is sufficiently clear to put Plaintiff on notice that settlement negotiations were occurring. However, it is immaterial to the fraud analysis because Plaintiff fails to establish the first element of concealment of a material fact.

Although Plaintiff argues concealment of a material fact by "carrying out a course of action in direct contradiction" to the email exchange between counsel, the Settlement Agreement was negotiated at arms-length by sophisticated parties represented by counsel. The Court agrees with Defendant that Plaintiff "does not cite a single case finding a duty to disclose a confidential settlement with another party." (ECF No. 39 at 16.) Plaintiff is effectively claiming that it wished it had negotiated a different agreement, namely one which protected it from Volkswagen's indemnity claim. However, Plaintiff's failure to negotiate a more favorable agreement does not amount to a concealment of material fact under a fraudulent inducement or fraud in the execution theory. Because Plaintiff cannot establish the first element, the Court declines to discuss the remaining elements.

Accordingly, the Court declines to set aside the Order of dismissal based on fraud.

### iii.    *Breach of Warranty*

Plaintiff argues the Settlement Agreement "contained a warranty — which BPTC knew to be false at the time — that neither party had 'assigned or transferred, or purported to transfer or assign to any person, firm, corporation, any claim, demand, damages, debt, liability, action, or cause of action released by this agreement.'" (ECF No. 38-1 at 8.) Plaintiff contends "BPTC had already transferred its claim against [Volkswagen] by agreeing to dismiss it as part of its secret settlement with [Volkswagen], accepting payment of that claim from [Volkswagen], causing [] [Volkswagen's] claim now against [Plaintiff]." (*Id.*) Plaintiff maintains that even though it has not seen any writings in relation to this settlement to determine if it contains express assignment language, "by alleging a joint obligation against both [Volkswagen] and [Plaintiff], then accepting payment from one of them, BPTC purported to transfer a right to contribution for the alleged joint obligation." (*Id.* at 8–9.) In opposition, Defendants contend BPTC did not assign or transfer its claim to Volkswagen or otherwise run afoul of the non-assignment language in the Settlement Agreement. (ECF No. 39 at 17.) Defendants maintain "[t]here was only a warranty that there was no assignment or transfer, and there was not." (*Id.* at 18.)

The elements of a breach of contract claim are: "(1) the contract[;] (2) plaintiff's performance or excuse for nonperformance[;] (3) defendant's breach[;] and (4) the resulting

1  damages to plaintiff." *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016) (internal quotation marks
2  and citation omitted).

3  Here, the warranty clause cited by Plaintiff is an express provision in the Settlement
4  Agreement, which states in full: "The Parties represent and warrant that they have not assigned or
5  transferred or purported to transfer or assign to any person, firm, corporation, any claim, demand,
6  damages, debt, liability, action, or cause of action released by this Agreement." (ECF No. 38-2 at
7  16.) Plaintiff cannot establish Defendants breached the Settlement Agreement — the third
8  element necessary for a breach of contract claim. Plaintiff simply states Defendants transferred
9  its claim against Volkswagen, but does not provide any evidence to establish this. The Court
10 agrees with Defendants that Plaintiff's citation to *Jackson v. Lacy*, 37 Cal. App. 3d 551, 559
11 (1940) is inapposite to the instant case. (*Id.* at 18.) *Jackson* stands for the proposition that "a
12 party acquires a right of contribution as soon as he pays more than his share but not until then,"
13 but here "there was simply no warranty whatsoever as to whether another party could have a
14 claim for contribution or indemnity." (*Id.*)

15 Accordingly, the Court declines to set aside the Order of dismissal based on a breach of
16 the warranty clause.

17                    *iv.*      *Unjust Enrichment*

18 Plaintiff argues it "will suffer manifest injustice in facing claims by [Volkswagen] for
19 payment to BPTC which BPTC agreed to forego in its Settlement Agreement with [Plaintiff]," as
20 "BPTC will be allowed to retain more than $215,000 which [Plaintiff] paid BPTC in
21 consideration for dismissal of BPTC's complaint against [Volkswagen]." (ECF No. 38-1 at 10.)
22 Plaintiff maintains, therefore, that "BPTC will be unjustly enriched by that amount, enjoying a
23 windfall as the fruit of its bad faith maneuvering and breach of the Settlement Agreement." (*Id.*)
24 In opposition, Defendants assert BPTC "did not fully recover its damages from the [Plaintiff and
25 Volkswagen] combined, much less double-recover" and case law does not support the contention
26 of "offset[ting] one settlement against another under the guise of preventing 'unjust enrichment.'"
27 (ECF No. 39 at 18–19.)

28

The Court agrees with Defendants that "the concept only appears to arise where one defendant settles and another does not, in which case the settlement may be offset against a judgment against the non-settling defendant." (*Id.* (citing *Seaman v. Sedgwick, LLP*, No. SA CV 11-0664-DOC, 2014 WL 12695096 (C.D. Cal. Aug. 14, 2014)).) Plaintiff's unjust enrichment argument presumes the Settlement Agreement is somehow deficient and therefore voidable. (*See* ECF No. 38-1 at 9–10.) However, Plaintiff cites no authority that unjust enrichment is a viable theory upon which to set aside an order of dismissal. (*See id.*) Accordingly, the Court declines to set aside the Order of dismissal based on an unjust enrichment theory.

Because the Court finds that Plaintiff's arguments that the additional payment by Volkswagen to Defendants amounts to a violation of the implied covenant of good faith and fair dealing, fraud, breach of warranty, and unjust enrichment are without merit, it cannot reasonably find that the instant motion (1) is necessary to correct manifest errors of law or fact upon which the judgment rests, (2) is necessary to present newly discovered or previously unavailable evidence, (3) is necessary to prevent manifest injustice, or (4) amendment is justified by an intervening change in controlling law. *See Allstate Ins. Co.*, 634 F.3d at 1111. Accordingly, the Court DENIES Plaintiff's motion to set aside the Court's December 29, 2020 Order dismissing the case with prejudice.

B.   Motion to Enforce the Settlement Agreement

Plaintiff further moves "to enforce the settlement agreement between itself and Defendants made by exchange of emails on December 15, 2020[,] and the formal "Settlement Agreement and Release" signed December 19, 2020." (ECF No. 38-1 at 2.) As noted earlier, the Settlement Agreement is the only agreement that exists between Plaintiff and Defendants and, by the terms of the integration clause, supersedes any previous exchange of emails containing settlement negotiations.

District courts have the inherent power to enforce a settlement agreement in an action pending before it. *See TNT Mktg., Inc. v. Aaresti*, 796 F.2d 276, 278 (9th Cir. 1986). However, a district court loses jurisdiction to enforce a settlement agreement after the cause of action is

dismissed, unless the court specifically retains jurisdiction to enforce the agreement. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381–82 (1994).

This case was closed on December 29, 2020, following a stipulation for voluntary dismissal with prejudice that was signed by counsel for both parties and filed with the Court on December 28, 2021. (ECF Nos. 35, 36.) The parties did not include a provision in the stipulation that expressly retained jurisdiction of this Court to enforce the agreement. (*Id.*) Without such a provision, the parties must seek enforcement of their settlement agreement through an action alleging breach of contract. *Kokkonen*, 511 U.S. at 381–82.

Accordingly, Plaintiff's motion to enforce the settlement agreement is DENIED.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Set Aside the Order of Dismissal or alternatively, to enforce the terms of the Settlement Agreement, is hereby DENIED. (ECF No. 38.)

IT IS SO ORDERED.

DATED:  March 21, 2022

Troy L. Nunley
United States District Judge

12